FILED

2019 JAN -3 AM 10: 17

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
EMANUEL B. TOWNSEND (SBN 305373)
etownsend@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL] and STATE OF CALIFORNIA, *ex rel.* [UNDER SEAL],**

Plaintiffs,

v.

**[UNDER SEAL],**

Defendants.

Case No. SACV19-00007-DOC-KESx

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR:**

1. **Violations of the Federal False Claims Act, §§ 3729(a)(1)(A); (a)(1)(B); and (a)(1(G);**
2. **California False Claims Act, Presenting False Claims California Government Code § 12651(a)(1), (a)(2) and (a)(8); and**
3. **California Insurance Code § 1871.7 (a) and (b)**

**JURY TRIAL DEMANDED**

**[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

PAID
JAN - 3 2019
Clerk, US District Court
COURT 4612

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
EMANUEL B. TOWNSEND (SBN 305373)
etownsend@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ***ex rel.*** **CURT CANALES and STATE OF CALIFORNIA,** ***ex rel.*** **CURT CANALES,**<br><br>Plaintiffs,<br><br>v.<br><br>**HEALTHQUEST LABORATORIES, INC.**, a California corporation; **BIOCORP CLINICAL LABORATORY**, a California corporation; **THOMAS GIANCURSIO**, an individual; **RANDY STADER**, an individual; **MARIO KOUCHAKALI**, an individual; **ROMIK MINASSIAN**, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR:**<br><br>**4. Violations of the Federal False Claims Act, §§ 3729(a)(1)(A); (a)(1)(B); and (a)(1(G);**<br><br>**5. California False Claims Act, Presenting False Claims California Government Code § 12651(a)(1), (a)(2) and (a)(8); and**<br><br>**6. California Insurance Code § 1871.7 (a) and (b)**<br><br>**JURY TRIAL DEMANDED** |

**[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

# TABLE OF CONTENTS

Page No.


I. INTRODUCTION .......... 1

II. PARTIES .......... 3

III. JURISDICTION AND VENUE .......... 5

IV. THE COMMERCIAL LABORATORY BUSINESS .......... 5

IV. DEFENDANTS' ILLEGAL KICKBACK SCHEME: CASH PAYMENTS AND ILLEGAL DISCOUNTS TO INDUCE THE REFERRAL OF MEDICARE, MEDI-CAL, AND OTHER THIRD-PARTY BUSINESS .......... 6

V. DEFENDANTS' DEEPLY DISCOUNTED CLIENT PRICES VIOLATE MEDI-CAL'S LOW-PRICE RULE .......... 11

VI. DEFENDANT HEALTHQUEST ILLEGALLY BILLS PRIVATE INSURERS UNDER THE WROING PROVIDER NUMBER .......... 15

VII. EVIDENCE OF SCHEME .......... 16

VIII. CAUSES OF ACTION .......... 19

FIRST CAUSE OF ACTION .......... 19

SECOND CAUSE OF ACTION .......... 20

THIRD CAUSE OF ACTION .......... 21

FOURTH CAUSE OF ACTION .......... 22

FIFTH CAUSE OF ACTION .......... 23

SIXTH CAUSE OF ACTION .......... 24

SEVENTH CAUSE OF ACTION .......... 25

EIGHTH CAUSE OF ACTION .......... 26

NINTH CAUSE OF ACTION .......... 26

TENTH CAUSE OF ACTION .......... 27

IX. PRAYER FOR RELIEF .......... 28

a. Pursuant to the Federal False Claims Act: .......... 28

b. Pursuant to the California False Claims Act: .................................... 28

c. Pursuant to the California Insurance Frauds Prevention Act: ........... 29

DEMAND FOR JURY TRIAL ........................................................................ 30

Plaintiffs UNITED STATES OF AMERICA ("United States") and the STATE OF CALIFORNIA ("California"), by and through Relator CURT CANALES ("CANALES"), alleges as follows:

## I. INTRODUCTION

1. This case is brought to stop brazen healthcare fraud in the clinical laboratory industry. The fraud is being carried out by Defendant HEALTHQUEST LABORATORIES, INC. ("HEALTHQUEST"), and its President and owner, Defendant TOM GIANCURSIO ("GIANCURSIO") Sales Manager, Defendant RANDY STADER ("STADER"), and former sales representatives Defendant MARIO KOUCHAKALI ("MARIO") and ROMIK "REMA" MINASSIAN ("REMA"). Defendants MARIO and REMA are now engaging in an identical fraudulent scheme at Defendant BIOCORP CLINICAL LABORTAORY, INC. ("BIOCORP").

2. HEALTHQUEST and BIORCORP are clinical medical laboratory companies located in Southern California that provide routine, toxicology, and molecular testing for their customers. HEALTHQUEST and BIORCORP have engaged in a blatantly fraudulent kickback scheme. Defendants GIANCURSIO, STADER, MARIO, and REMA designed and implemented the kickback scheme, to procure millions of dollars in Medi-Cal, Medicare, and private insurance business. The scheme is straightforward: (1) Defendants provide physicians with illegal cash payments and illegal discounts in exchange for the physicians' clinical laboratory business; and (2) Defendants provide their clients (i.e., physicians) with rates for private payers that are between 50% and 90% less than what they charge and receive from Medi-Cal and Medicare in exchange for sending all their business to HEALTHQUEST and BIOCORP. MARIO and REMA left HEALTHQUEST in April of 2018 and continued the scheme at BIOCORP. HEALTHQUEST continues to engage in the same fraudulent practices.

3. Defendants' practices are an unlawful kickback scheme, strictly prohibited by the Medicare statutes and other laws, and give rise to False Claims Act liability. Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) creates liability for "whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

4. Defendants' fraud also violates unique, clearly defined California laws that preclude clinical laboratories from providing doctors with cash payments and/or discounts to induce the referral of Medi-Cal business (See, e.g., Bus. & Prof. Code § 650) and require Medi-Cal providers to bill Medi-Cal their *lowest* rates for the same services under comparable circumstances (See 22 Cal, Code Regs. § 51501).

5. In direct violation of federal and California law, Defendants have routinely paid cash payments to physicians and provided rates to their physician clients that are between 50% and 90% lower than what they charge and receive from Medi-Cal and Medicare. Defendants provide the cash payments and deep discounts to draw in lucrative Medi-Cal, Medicare, and private insurer referrals. For example, one HEALTHQUEST physician client received a kick-back of two-thirds of the commissions HEALTHQUEST's sales representatives made off his business. As another example, one of HEALTHQUEST's physician clients received discounts on direct-pay tests that were 90% below the rates HEALTHQUEST charged to Medi-Cal and Medicare in exchange for sending **all** their business to HEALTHQUEST. By their unlawful scheme, Defendants have cheated Medi-Cal, Medicare, and private insurers out of millions of dollars.

///

6. Each claim for payment Defendants have submitted, or caused to be submitted, to Medi-Cal or Medicare for tests procured through kickbacks and each charge to Medi-Cal or Medicare that exceeds a discounted price given to another customer constitutes a violation of the federal False Claims Act ("FCA") (31 U.S.C. §§ 3150 *et seq.*) and the California False Claims Act ("CFCA") (Gov. Code §§ 12650 *et seq.*). Defendants have fraudulently obtained millions of dollars from Medi-Cal and Medicare as a direct result of their illegal kickbacks and discounts. This suit calls Defendants to answer for defrauding taxpayers and compromising the welfare of Medi-Cal and Medicare beneficiaries.

7. Because Defendants' fraudulent scheme violates the Federal False Claims Act, the United States is entitled to recover treble damages, civil penalties, and attorneys' fees and costs for Plaintiffs and on behalf of the United States for fraudulent Medicare and other federally funded health program billings. Similarly, because Defendants' fraudulent scheme violated the California False Claims Act, California is entitled to treble damages, a penalty of up to $11,000 for every one of Defendants' false claims, and attorneys' fees and costs.

8. This action also involves violations of the California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins. Code § 1871.1(a) and (b), and Relator seeks civil penalties of $10,000 to be imposed for each and every false and fraudulent claim presented to private insurers, treble damages, and attorneys' fees and costs. Non-public information personally known to Relator serves as the basis of this action.

## II. PARTIES

9. The plaintiffs in this action are the UNITED STATES OF AMERICA, the STATE OF CALIFORNIA, and Relator CURT CANALES. At all times material to this action, CMS was an agency of Plaintiff United States of America and administered the Medicare program, which paid benefits from Federal Government funds. CMS provided benefits to qualified recipients which

included payment of claims to Defendants for their laboratory tests. Similarly, at all times material to this action, DHCS was an agency of Plaintiff State of California and administered California's Medi-Cal program, which paid benefits from a combination of State and Federal Government funds in an approximate 50/50 ratio. DHCS provided Medi-Cal benefits to qualified recipients, which included payment of claims to Defendants for their laboratory tests. CMS and DHCS paid Defendants' claims based upon Defendants' false representations, among other things, that the fees being charged were calculated in accordance with applicable Medicare and Medi-Cal regulations, and were not the result of unlawful kickbacks.

10. Defendant HEALTHQUEST is a California corporation with its principal place of business at 1800 Carnegie Ave., Santa Ana, California 92705. At all times relevant hereto, HEALTHQUEST conducted business in California, including but not limited to providing clinical laboratory services to the public in California.

11. Defendant BIOCORP is a California corporation with its principal place of business at 9825 Painter Ave, Suite A-E, Whittier, California 90605. At all times relevant hereto, BIOCORP conducted business in California, including but not limited to providing clinical laboratory services to the public in California.

12. Defendant GIANCURSIO is an individual engaged in the commercial reference laboratory business in California.

13. Defendant STADER is an individual engaged in the commercial reference laboratory business in California.

14. Defendant MARIO is an individual engaged in the commercial reference laboratory business in California.

15. Defendant REMA is an individual engaged in the commercial reference laboratory business in California.

## III. JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the Federal False Claims Act, and authorize nationwide service of process.

17. Venue is proper in this district pursuant to 31 U.S.C. section 3732(a), as Defendants transact business in this district. This Court also has supplemental jurisdiction over CFCA & IFPA claims.

## IV. THE COMMERCIAL LABORATORY BUSINESS

18. Defendants HEALTHQUEST and BIOCORP are commercial reference laboratories. Commercial reference laboratories perform clinical laboratory services, which entail analyses of human blood, urine, stool, and other body specimens to assist physicians in diagnosing human disease and monitoring treatment. Two types of laboratories generally perform clinical laboratory services. Hospital laboratories are primarily concerned with inpatient testing. Commercial reference laboratories primarily provide outpatient testing for physician offices and/or esoteric testing for hospitals and other laboratories.

19. Commercial reference laboratories, including Defendants HEALTHQUEST and BIOCORP, perform clinical laboratory services for patients covered under Medicare, California's Medi-Cal program, and private insurance. Medicare is administered by the Centers for Medicare & Medicaid Services (CMS), a division of the U.S. Department of Health & Human Services (HHS). Medi-Cal is administered by the DHCS. Commercial reference laboratories obtain requests for clinical tests from physicians and hospitals. When these tests are eligible for Medicare or Medi-Cal reimbursement, Defendants submit electronic and/or paper invoices directly to CMS or DHCS or their fiscal intermediaries for reimbursement, identifying the tests by a uniform Current Procedure Technology ("CPT") code. Those invoices are stored in

electronic form on computer hard drives and other storage devices maintained by Defendants, DHCS, and CMS.

## IV. DEFENDANTS' ILLEGAL KICKBACK SCHEME: CASH PAYMENTS AND ILLEGAL DISCOUNTS TO INDUCE THE REFERRAL OF MEDICARE, MEDI-CAL, AND OTHER THIRD-PARTY BUSINESS

20. Defendants made false claims to Medicare, Medi-Cal, and private insurers for payment for laboratory tests by submitting claims for which no payment at all was due because the services for which payment was being sought were procured by means of illegal kickbacks.

21. The claims that are the subject of this Complaint were paid by Medicare, Medi-Cal, and private insurers because of their mistaken belief, caused by Defendants' acts and omissions, that Defendants had a right to receive the payments made. Defendants fraudulently concealed the fact that they did not have a right to those payments by means of the false claims and representations described in this Complaint.

22. HEALTHQUEST and BIOCORP are clinical medical laboratories that perform a variety of lab tests for patients across the state. The lab industry is highly competitive, and through its sales representatives, HEALTHQUEST and BIOCORP actively solicit the referral of business from healthcare providers, such as individual physicians, hospitals, clinics, independent physician associations ("IPAs"), group purchasing organizations ("GPOs"), and health maintenance organizations. These medical providers generally have a choice of medical laboratories to which they can send their patients' lab tests. The lab tests are ordered by "CPT" (Current Procedure Technology) code, which are standard across the healthcare industry, or by a lab-specific order code. All tests ordered under the same code are performed in the same manner by the lab. Once the lab tests are completed, the laboratory bills various entities for the tests. For some patients' lab tests, HEALTHQUEST and BIOCORP bill the medical providers

who ordered the tests. For many other patients, HEALTHQUEST and BIOCORP bill Medi-Cal, Medicare, patients, or third-party private insurers.

23. The scheme began at HEALTHQUEST in or about September 2017, after HEALTHQUEST purchased another clinical laboratory, BioData Medical Laboratory Inc., out of bankruptcy. Shortly after the acquisition, defendants GIANCURSIO and STADER instituted a commission structure for HEALTHQUEST's sales representatives comprised of a 30% commission, with no base salary. The typical structure in the industry is a base salary plus small commission (~10%). Relator warned GIANCURSIO and STADER that such a pure, high-commission structure could incentivize sales reps to engage in kickbacks to secure business, by, for example, sharing their commissions with clients. Relator warned GIANCURSIO and STADER that such a situation could jeopardize the company with the OIG.

24. In fact, Defendants GIANCURSIO, STADER, MARIO, and REMA designed the commission structure to encourage sales representatives to do exactly what Relator warned them of. HEALTHQUEST's then top sales representatives, MARIO and REMA, provided their customers with cash kickbacks in exchange for their business. **MARIO and REMA provided the kickbacks primarily by personally paying the customers' bills**. Knowing this, defendants GIANCURSIO and STADER instructed HEALTHQUEST's employees to forward all sales leads to MARIO and REMA. MARIO and REMA left HEALTHQUEST in April of 2018 and have continued the cash kickback scheme at their new lab, BIOCORP. HEALTHQUEST also continues to engage in the cash kickback scheme.

25. HEALTHQUEST and BIOCORP, by and through their sales representatives, can carry out their cash kickback scheme due to their typical payer mix for customers. For example, a typical customer may have the following payer mix for the tests ordered in a given month: 45% Medi-Cal

(billed directly by the lab to Medi-Cal); 20% Medicare (billed directly by the lab to Medicare); 20% private insurance (billed directly by the lab to private insurers); 5% Patient (billed by the lab to the patient, usually paid right at the time of the blood draw); and **10% Client** (billed by the lab to the physician). Thus, the ordering physician or practice is only directly financially responsible for 10% of the tests ordered (those are typically for tests that are part of a bundles of services offered by the physician to clients or are for cash-paying patients whose tests the physician marks up). **For this hypothetical client, if the monthly client bill is $10,000, Defendants' sales representatives, will pay that bill out of their own commission. Defendants are thus able to secure $90,000 in Medi-Cal, Medicare, private insurance, and patient revenue, in exchange for a $10,000 bribe**.

26. Defendants made these cash kickback payments via cashier's checks, which MARIO and REMA hand delivered to Defendants' billing departments on behalf of their accounts.

27. One of the owners of Miracle Medical Clinic, Shiva Eshagian P.A., a client of HEALTHQUEST, admitted to Relator that HEALTHQUEST's sales representatives, MARIO and REMA, were providing Miracle with a kickback of two-thirds of the commissions they made on Miracle business.

28. In addition to the cash kickbacks, Defendants HEALTHQUEST and BIOCORP provide their clients (i.e., physicians) with rates that are between 50% and 90% less than what they charge and receive from Medi-Cal. These discounts are an illegal kickback. For example, one of HEALTHQUEST's clients, California Medical Clinic, received discounts on *direct-pay* tests of 90% off Medi-Cal in exchange for sending all their business to the laboratory. HEALTHQUEST attempted to legitimize these discounts by characterizing them as "prompt pay" discounts, for accounts that paid within 10 days of invoice. However, none of the accounts paid within 10 days, let alone "promptly."

BIOCORP engages in the same fraudulent discount practices.

29. HEALTHQUEST and BIOCORP offer these deeply discounted rates to secure the business and referrals of the medical providers. Due to the discounts, the medical providers thereby lower their costs, and can increase their profits. In exchange for these discounts, the medical providers refer their patients to the Defendants. These referrals, obtained in exchange for discounts, are referred to by industry insiders as "pull-through." These discounts, when they are provided to induce the pull-through of Medicare, Medi-Cal, and private insurer business, amount to illegal kickbacks under Federal and California law. *See* 42 U.S.C. § 1320a-7b(b)(2)(A); Bus. & Prof. Code § 650. Defendants violated the FCA, CFCA, and CIFPA by submitting claims for payment of laboratory tests that were procured by way of the illegal cash payments and discounts provided to their clients.

30. **In addition to its cash and discounts kickback schemes, Defendants have routinely written off entire client bill balances for clients that brought in significant amounts of Medi-Cal, Medicare, and other third-party business**. These write-offs are given to induce Defendants' clients to refer their Medi-Cal, Medicare, and other third-party business to Defendants. For example, HEALTHQUEST would write off 90% of California Medical Clinic's bill for "cash patients" in exchange for all of its Medicare, Medi-Cal, and privately-insured business. Representatives of California Medical Clinic would hand write checks to HEALTHQUEST for 10% of the clinic's total monthly bill. HEALTHQUEST's sales representatives were responsible for picking up the checks.

31. In addition to the extremely deep discounts to California Medical Clinic, HEALTHQUEST routinely provided their clients with 50% write offs on "cash patients" in exchange for all of the client's Medicare, Medi-Cal, and privately-insured business.

32. Defendants HEALTHQUEST and BIOCORP 's entire business models revolve around providing these kickbacks to induce referrals. Defendants HEALTHQUEST and BIOCORP depended, and continue to depend, on these referrals of large volumes of Medicare, Medi-Cal, and private insurer testing business to cover the losses they would otherwise sustain in offering deeply discounted testing services. Defendants GIANCURSIO, STADER, MARIO, and REMA also depend on these kickbacks for their own financial gain.

33. Defendants' practices are unlawful as kickback schemes, strictly prohibited by Medicare statutes. Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "[w]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) ***directly or indirectly, overtly or covertly***, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

34. Defendants' practices are also unlawful as kickback schemes, strictly prohibited by California's health care providers licensing and Medi-Cal statutes. Specifically, Business and Professions Code section 650 prohibits, *inter alia*, the offer or acceptance of "any rebate, refund, ... preference, ... *discount* or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers." (Emphasis added.) Welfare and Institutions Code section 14107.2 similarly prohibits every Medi-Cal provider from soliciting or receiving "any *kickback*, bribe, or rebate, *directly or indirectly, overtly or covertly,* in cash or in valuable consideration of any kind ... [i]n return for the referral, or promised referral, of any person for the furnishing ... of any service" covered by the Medi-Cal program. (Emphasis added.)

///

35. At all times relevant hereto, each Defendant knew that California law prohibited their giving or receiving these kickbacks. Defendants certified, both explicitly and implicitly, that each claim they submitted to Medicare and Medi-Cal would fully comply with all statutes and regulations, including the anti-kickback provisions, and that as Medicare and Medi-Cal providers, they would comply with all pertinent statutes and regulations, including the anti-kickback provisions.

36. Defendants violated the FCA, CFCA, and CIFPA by charging, or causing charges to be made to, Medicare, Medi-Cal, and/or private insurers for lab tests that were referred to Defendants by providers because of the various kickbacks (i.e., cash payments, discounts, and write-offs) offered to those providers by Defendants. Each claim submitted to CMS, DHCS, and/or private insurers that was referred to Defendants by a provider who received a kickback from Defendants constitutes a false claim in violation of the FCA, CFCA, and CIFPA.

## V. <u>DEFENDANTS' DEEPLY DISCOUNTED CLIENT PRICES VIOLATE MEDI-CAL'S LOW-PRICE RULE</u>

37. As mentioned above, for those lab tests for which Defendants bill the medical providers directly, they charge deeply discounted prices. For those lab tests conducted on Medi-Cal patients, however, Defendants bill Medi-Cal, rather than the medical provider. When they do so, they typically bill Medi-Cal the highest amount that they charge any client. This is illegal. The Medi-Cal regulations require Defendants to charge Medi-Cal the lowest price that they offer to others for the same tests under comparable circumstances. *See* 22 Cal, Code Regs. § 51501. Defendants have clandestinely violated California Code of Regulations, title 22, section 51501.

///

///

38. Specifically, California Code of Regulations, title 22, section 51501, subdivision (a), requires as follows:

> ***Notwithstanding any other provisions of these regulations,*** no provider shall charge for any service or any article more than would have been charged for the *same service* or article to ***other purchasers of comparable services*** **or articles** ***under comparable circumstances.*** (Emphasis added.)

39. That regulation is intended to address "federal and state concerns with dual pricing and the Department's obligation to see that Medi-Cal is managed economically." *Physicians & Surgeons Laboratories, Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 985. Defendants were free to charge any other purchaser any fee for their services, so long as Medi-Cal obtained the best price available to other purchasers of comparable services under comparable circumstances. Defendants gave their discounted rates to their clients for comparable services under comparable circumstances.

40. Charges in excess of the maximum allowable fees are subject to recovery under both the Medi-Cal statute (Cal. Welf. & Inst. Code § 14107.11) and the California False Claims Act (Gov. Code §§ 12650 et seq.), as well as under common law.

41. Defendants' Medi-Cal Provider Agreements also made clear their duty, consistent with the program's public purposes, to charge their *lowest* fees to California and refrain from conduct that would harm the Medi-Cal program or its beneficiaries. Among other commitments, Defendants agreed to do all the following:

> **Compliance With Laws and Regulations**. Provider agrees to comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code (commencing with Sections 14000 and 14200), and any applicable rules or regulations promulgated by DHCS pursuant to these Chapters…..

> **Forbidden Conduct**. Provider agrees that it shall not engage in conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary, ***or the fiscal integrity of the Medi-Cal program.*** (Emphasis added).

> **Provider Fraud and Abuse.** Provider agrees that it shall not engage in

or commit fraud or abuse.

**Prohibition of Rebate, Refund, or Discount.** Provider agrees that it shall not offer, give, furnish, or deliver any rebate, refund, commission preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not solicit, request, accept, or receive, any rebate, refund, commission preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it will not take any other action or receive any other benefit prohibited by state or federal law.

42. In other words, Defendants agreed to bill Medi-Cal at their *lowest* rates, not to give or take *kickbacks*, and to conduct their business relationship with California with a view to the *program's public purpose* and the *welfare of California's citizens.*

43. Defendants have repeatedly defrauded the Medi-Cal program by charging California fees well in excess of those charged to other purchasers under comparable circumstances. Rather than abide by DHCS regulations and their Medi-Cal Provider Agreements, Defendants provided clinical laboratory services to physicians and other health care providers at fees deeply discounted below what they charged Medi-Cal, and below the maximum payments permitted under Medi-Cal's published fee schedule, for the same services under comparable circumstances. Those maximum allowances are only payable when the provider charges no lower fee, and charging Medi-Cal more for any service than was charged to other purchasers of comparable services under comparable circumstances violates Medi-Cal regulations.

44. Defendants submitted, or caused to be submitted, electronic or paper invoices for clinical laboratory tests directly to DHCS or its fiscal intermediary for Medi-Cal for reimbursement. When submitting these invoices to Medi-Cal for reimbursement, Defendants did not apply the same discounts that they gave to other purchasers of the same lab services under comparable circumstances. Defendants, and each of them, instead submitted invoices for an amount that

exceeded the discounted fees, and in most cases equaled or exceeded the maximum Medi-Cal reimbursement rate for each test performed. Each of those invoices constituted a false claim, as an overcharge to DHCS.

45. Each of those claims was further false because, in submitting those claims for payment to Medi-Cal, Defendants represented, or caused to be represented, that their fees complied with DHCS regulations. Those representations were false, in that Defendants were in fact charging far lower fees for the same services to other purchasers of comparable services under comparable circumstances, in violation of Section 51501.

46. At all times relevant hereto, Defendants "knew" or acted "knowingly," as those terms are defined in California Government Code section 12650, subdivision (b)(2), in making, presenting, or submitting false claims. In that respect, each Defendant acted: (a) With actual knowledge of the information; or (b) In deliberate ignorance of the truth or falsity of the information; or (c) With reckless disregard of the truth or falsity of the information

47. At all times relevant hereto, each Defendant presented false claims, as defined in California Government Code sections 12650 and 12651, by: (a) Knowingly presenting or causing to be presented to an officer or employee of California false claims for payment or approval of claims for Medi-Cal reimbursement; and/or, (b) Knowingly making, using, or causing to be made or used false records or statements to get false claims paid or approved by California for Medi-Cal reimbursement; and/or (c) Being a beneficiary of inadvertent submissions of false claims to California, subsequently discovering the falsity of the claims, and failing to disclose the false claims to California within a reasonable time after discovery of the false claims.

48. Defendants submitted, or caused to be submitted, electronic or paper invoices to Medi-Cal for clinical laboratory testing that reflected fees higher than

those charged by these Defendants to other purchasers of the same lab tests, under comparable circumstances.

49. At all times relevant hereto, each Defendant knew that its conduct would cause Medi-Cal to pay claims for the clinical laboratory tests based on fees higher than those charged for the same services to other purchasers of comparable services under comparable circumstances.

50. Defendants actively concealed the acts alleged herein from the State of California. Defendants never informed California of the discounted prices they charged their other customers. As a result of the foregoing, each claim for payment that did not comply with Section 51501 was an overcharge, and therefore constituted a false claim in violation of California's False Claims Act (Gov. Code § 12650 *et seq.).*

## VI. DEFENDANT HEALTHQUEST ILLEGALLY BILLS PRIVATE INSURERS UNDER THE WROING PROVIDER NUMBER

51. Additionally, since acquiring BioData's Montclair laboratory facility and provider numbers, HEALTHQUEST has been billing private insurers for drug screens tested in their Irvine facility, using the Montclair facility provider number and address. It is strictly illegal to bill under the provider number of a facility where the test was not performed. HEALTHQUEST uses BioData's Montclair facility provider number and address to bill private insurers for which HEALTHQUEST is "out of network" and for which BioData is "in network." Because HEALTHQUEST is "out of network," the private insurers would deny most of its claims and process the remaining claims more slowly than they would for "in network" claims. HEALTHQUEST uses BioData's "in network" Montclair provider number and address to fraudulently induce private insurers to accept its "out of network" claims. HEALTHQUEST's provider number scheme violates the CIFPA.

///

## VII. EVIDENCE OF SCHEME

66. Relator is in possession of a document showing MARIO and REMA's monthly sales and receipts for the month of March of 2018. The document shows that on average, HEALTHQUEST's charged Medi-Cal 256% more for tests it billed directly to Medi-Cal than for tests it billed directly to its physician clients, under comparable circumstances.

67. Relator also has firsthand knowledge of HEALTHQUEST's kickback scheme. As noted earlier, one of the owners of Miracle Medical Clinic, Shiva Eshagian P.A., a client of HEALTHQUEST, admitted to Relator that HEALTHQUEST's sales representatives, MARIO and REMA, were providing Miracle with a kickback of two-thirds of the commissions they made on Miracle business. Ms. Eshagian made this admission when Relator met with her shortly after he was terminated from HEALTHQUEST for refusing to participate in its fraudulent billing practices.

68. Defendants have engaged in their cash kickback and discount kickback schemes with the following providers:

| |
|---|
| **Afshin Akhavan MD**<br>530 E. Washington Blvd.<br>LA, CA 90015<br><br>2409 S. Vermont Ave<br>LA, CA 90007 |
| **Joseph Kang MD**<br>5240 E. Beverly Blvd<br>LA, CA 90022 |
| **Syrus Feridouni MD**<br>6830 Reseda Blvd<br>Reseda, CA 91335<br><br>7211 Van Nuys Blvd<br>Van Nuys, CA 91405 |
| **United Care Family Medical Center (Alfred Lavi MD)**<br>2324 Pico Blvd<br>LA, CA 90006 |

| |
|---|
| 1835 S. La Cienega Blvd<br>LA, CA 90035 |
| **<u>Maryam Mortezaiefard MD</u>**<br>22554 Ventura Blvd<br>Woodland Hills, CA 91364 |
| **<u>Ador H. Bustamante MD</u>**<br>5417 York Blvd<br>LA, CA 90042 |
| **<u>Armen Derboghossians MD</u>**<br>1030 S Glendale Ave #401<br>Glendale, CA 91205 |
| **<u>Amiri Nozar MD</u>**<br>117 W California Ave<br>Glendale, CA 91203 |
| **<u>Jagan Bansal MD</u>**<br>5540 N Figueroa St<br>LA, CA 90042 |
| **<u>Shahin Derboghossians MD</u>**<br>1030 S Glendale Blvd #301<br>Glendale, CA 91205 |
| **<u>Annette Saldana MD</u>**<br>18518 Sherman Way<br>Reseda, CA 91335 |
| **<u>Clinica Familiar Santo Nino</u>**<br>3412 N. Eastern Ave<br>LA, CA 90032 |
| **<u>Homan Siman MD</u>**<br>1231 N. Avalon Blvd<br>Wilmington, CA |
| **<u>David Hernandez MD</u>**<br>22030 Sherman Way #215<br>Canoga Park, CA 91303 |
| **<u>Drip Doctors</u>**<br>1119 ½ S. Hope St<br>LA, CA 90015 |

| |
|---|
| **Elevate Health Group**<br>1577 E. Chevy Chase Dr #260<br>Glendale, CA 91206 |
| **Family Health Clinic**<br>12610 Glenoaks Blvd<br>Sylmar, CA 91342 |
| **Jay J Lin MD**<br>22030 Sherman Way #201<br>Canoga Park, CA 91303 |
| **Karine Kirakosyan MD**<br>500 E Olive Ave<br>Burbank, CA 91501 |
| **Malverse Martin MD**<br>22110 Roscoe Blvd #203<br>West Hills, CA 91304 |
| **Michael Eshigian MD (Miracle Womens Clinic)**<br>16133 Ventura Blvd #415<br>Encino, CA 91436<br><br>7100 Van Nuys Blvd<br>Van Nuys, CA 91405 |
| **Parviz Akhavan MD**<br>723 E. Manchester Ave<br>LA, CA 90001 |
| **Noalab Medical Clinic Inc**<br>6428 Coldwater Canyon Ave<br>North Hollywood, CA 91606 |
| **Rangarao Pangluri MD**<br>4111 Main Ave<br>Baldwin Park, CA 91706 |
| **Raymond Moallemi MD**<br>3755 Beverly Blvd<br>LA, CA 90004 |
| **Ricky Onofre-Vazquez MD**<br>12095 W Washington Blvd<br>LA, CA 90006 |

| |
|---|
| **Richard Roman MD**<br>4708 Eagle Rock Blvd<br>LA, CA 90041 |
| **Vachik Shahnazarian MD**<br>1030 S Glendale Blvd #304<br>Glendale, CA 91205 |
| **Rajan Garg MD**<br>9201 E Whittier Blvd/Pico Rivera 90660 |
| **VIP Urgent Care**<br>18751 Ventura Blvd #100<br>Tarzana, CA 91356 |
| **Van Nuys Urgent Care Family Medicine**<br>7211 Van Nuys Blvd<br>Van Nuys, CA 91405 |
| **Hermilito Villar MD**<br>14400 Roscoe Blvd #B<br>Panorama City, CA 91402<br>Westwind Health Services<br>22110 Roscoe Blvd #104<br>Canoga Park, CA 91304 |

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**On Behalf of The United States**
**Federal False Claims Act, Presenting False Claims**
**(Against All Defendants)**
**31 U.S.C. § 3729(a)(1)(A)**

69. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

70. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

71. Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

72. Defendants knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare and Medicaid programs that were higher than it was permitted to claim or charge by applicable law. Among other things, Defendants knowingly submitted false claims for Medicare and Medicaid business that was obtained by means of, and as a result of, illegal kickbacks.

73. Defendants knowingly made, used, and caused to be made and used false certifications that claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

74. The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

**SECOND CAUSE OF ACTION**
**On Behalf of The United States**
**Federal False Claims Act, Making or Using False Records or Statements Material to Payment or Approval of False Claims**
**(Against All Defendants)**
**31 U.S.C. § 3729(a)(1)(B)**

75. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

76. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

77. Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

78. Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare and Medicaid programs that

were higher than they were permitted to claim or charge by applicable law. Among other things, Defendants knowingly submitted false claims for Medicare and Medicaid business that was obtained by means of, and as a result of, illegal kickbacks.

79. Defendants knowingly made, used, and caused to be made and used false certifications that claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

80. The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

**THIRD CAUSE OF ACTION**
**(In the Alternative)**
**On Behalf of the United States, Retention of Proceeds to Which Not Entitled**
**(Against All Defendants)**
**31 U.S.C. § 3729(a)(1)(G)**

81. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

82. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

83. In the alternative, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

84. As discussed above, Defendants received far more money from the Medicare and Medicaid programs than they were entitled to. Defendants knew that they received more money than they were entitled to, and avoided their obligation to return the excess money to the Government.

///

85. The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**California False Claims Act, Presenting False Claims California Government Code § 12651(a)(1)**
**(Against All Defendants)**

86. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

87. Defendants, and each of them, knowingly (as defined in California Government Code section 12650, subdivision (b)(2)) presented or caused to be presented false claims for payment or approval to an officer or employee of California.

88. Each Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program that were higher than they were permitted to claim or charge by applicable law, including but not limited to section 51501 of title 22 of the California Code of Regulations. Among other things, Defendants, and each of them, charged more for services than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

89. Each Defendant knowingly submitted false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

90. Each Defendant knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

91. The conduct of Defendants, and each of them, violated Government Code section 12651, subdivision (a)(1) and caused California to sustain damages

in an amount according to proof pursuant to California Government Code section 12651, subdivision (a).

**FIFTH CAUSE OF ACTION**

**California False Claims Act, Making or Using False Records or Statements to Obtain Payment or Approval of False Claims California Government Code § 12651(a)(2)**
**(Against All Defendants)**

92. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

93. Defendants, and each of them, knowingly (as defined in California Government Code section 12650, subdivision (b)(2)) made, used, or caused to be made or used false records or statements to get false claims paid or approved by California.

94. Each Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program that were higher than they were permitted to claim or charge by law, including but not limited to section 51501 of title 22 of the California Code of Regulations. Among other things, Defendants, and each of them, charged more for services than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

95. Each Defendant knowingly submitted false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

96. Each Defendant knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

97. The conduct of Defendants, and each of them, violated Government Code section 12651, subdivision (a)(2) and caused California to sustain damages

in an amount according to proof pursuant to Government Code section 12651, subdivision (a).

**SIXTH CAUSE OF ACTION**

**California False Claims Act, Retention of Proceeds of Inadvertently Submitted False Claims California Government Code § 12651(a)(8)**
**(Against All Defendants)**

98. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

99. In the alternative, Defendants, and each of them, was a beneficiary of inadvertent submissions of false claims to California, subsequently discovered the falsity of the claims, and failed to disclose the false claims to California within a reasonable time after discovery of the false claims.

100. Each Defendant was the beneficiary of false claims, bills and charges to the Medi-Cal program for amounts that were higher than permitted by law, including but not limited to section 51501 of title 22 of the California Code of Regulations. Among other things, Defendants, and each of them, were the beneficiaries of false bills and charges to the Medi-Cal program for more than would have been charged for the same services to other purchasers of comparable services under comparable circumstances.

101. Each Defendant was the beneficiary of false claims for Medi-Cal business that was obtained by means of, and as a result of, illegal kickbacks.

102. Each Defendant was the beneficiary of false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes.

103. Each Defendant, on discovering that it was the beneficiary of the submission, of false claims for Medi-Cal reimbursement, failed promptly to disclose the overcharge to California and failed to make restitution of payments to which it was not entitled.

///

104. The conduct of Defendants, and each of them, violated Government Code section 12651, subdivision (a)(8) and caused California to sustain damages in an amount according to proof pursuant to Government Code section 12651, subdivision (a).

**SEVENTH CAUSE OF ACTION**
**On Behalf of the State of California, California Insurance Frauds Prevention Act, Employment of Runner, Cappers and Steerers or Other Persons to Procure Patients**
**Cal. Ins. Code § 1871.7(a)**
**(Against All Defendants)**

105. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

106. Pursuant to California Insurance Code §1871.7(a), it is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure patients for the purpose of submitting a claim to that patient's insurance carrier.

107. Defendants unlawfully incentivized physicians paying illegal remuneration in the form of kickbacks for the purpose of procuring more physicians to order tests, which were ultimately submitted to Medicare and private insurance companies for reimbursements. Defendants conspired together, and did so in order to submit claims for payment to insurance carriers in violation of Cal. Ins. Code §1871.7(a).

108. Because the claims submitted to medical insurers by Defendants were procured by runners, cappers, and steerers and other persons, these claims were false and fraudulent under the California Insurance Frauds Prevention Act.

109. This conduct was a substantial factor causing damages detailed herein.

///

///

///

///

**EIGHTH CAUSE OF ACTION**

**On Behalf of the State of California, California Insurance Frauds Prevention Act, Presenting or Causing to be Presented False or Fraudulent Claims for the Payment of An Injury Under A Contract of Insurance**
**Cal. Ins. Code § 1871.7(b); Cal. Pen. Code § 550(a)(1)**
**(Against All Defendants)**

110. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

111. Defendants have all either knowingly presented or caused to be presented false and fraudulent claims for reimbursement of tests, or conspired to present or cause to be presented such false and fraudulent claims.

112. These claims were fraudulent because:

- Defendants knowingly sought and falsely represented that they were entitled to reimbursement for tests that were procured by means of, or otherwise involved, the payment of illegal kickbacks.

113. Defendants either directly presented such false claims for payment to insurers, or caused such false claims to be presented.

114. This conduct was a substantial factor causing damages detailed herein.

**NINTH CAUSE OF ACTION**

**On Behalf of the State of California, California Insurance Frauds Prevention Act, Knowingly Preparing or Making Any Writing in Support of a False or Fraudulent Claim**
**Cal. Ins. Code § 1871.7(b); Cal. Pen. Code § 550(a)(5)**
**(Against All Defendants)**

115. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint.

116. Defendants have all either knowingly prepared, made, or subscribed a writing with an intent to present or use it, or to allow it to be presented, in support of false and fraudulent claims for the reimbursement of tests performed on patients, or have aided, abetted, and solicited, or conspired to make, or subscribe such a writing.

117. These writings include bills for payment presented to insurance carriers for payment, and invoices prepared in support of such bills for payment. Such bills for payment constitute false or fraudulent claims because through those bills:

- Defendants knowingly sought and falsely represented that they were entitled to reimbursement for tests that were procured by means of, or otherwise involved, the payment of illegal kickbacks.

118. Defendants either directly presented such false claims for payment to insurers, or caused such false claims to be presented.

119. This conduct was a substantial factor causing damages detailed herein.

**TENTH CAUSE OF ACTION**

**On Behalf of the State of California, California Insurance Frauds Prevention Act, Knowingly Making or Causing to be Made Any False or Fraudulent Claim for Payment of a Health Benefit**
**Cal. Ins. Code § 1871.7(b); Cal. Pen. Code § 550(a)(6)**
**(Against All Defendants)**

120. Relator incorporates herein by reference and realleges all of the allegations stated in this Complaint

121. Defendants have all either knowingly presented or caused to be presented false and fraudulent claims for reimbursement of tests performed on patients, or have aided, abetted, and solicited, or conspired to present or cause to be presented such false and fraudulent claims.

122. The claims were false or fraudulent because:

- Defendants knowingly sought and falsely represented that they were entitled to reimbursement for tests that were procured by means of, or otherwise involved, the payment of illegal kickbacks.

123. Defendants either directly presented such false claims for payment to insurers, or caused such false claims to be presented.

124. This conduct was a substantial factor causing damages detailed herein.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment in their favor and against Defendants as follows:

125. That judgment be entered in favor of plaintiffs UNITED STATES OF AMERICA and STATE OF CALIFORNIA ex rel. CURT CANALES, and against Defendants HEALTHQUEST LABORATORIES, a California Corporation, BIOCORP CLINICAL LABORATORY, a California corporation, TOM GIANCURSIO, an individual, RANDY STADER, and individual, MARIO KOUCHAKALI , an individual, ROMIK MINASSIAN, an individual; and each of them, jointly and severally, according to proof, as follows:

**a. Pursuant to the Federal False Claims Act:**

i. Triple the amount of California's damages;

ii. Civil penalties of Eleven Thousand Dollars ($11,000.00) for each false claim;

iii. Recovery of costs, attorneys' fees, and expenses;

iv. Pre- and post-judgment interest;

v. Such other and further relief as the Court deems just and proper;

vi. That Relator be awarded the maximum percentage of any recovery allowed to him under the False Claims Act;

**b. Pursuant to the California False Claims Act:**

i. Triple the amount of California's damages;

ii. Civil penalties of Eleven Thousand Dollars ($ 11,000.00) for each false claim;

iii. Recovery of costs, attorneys' fees, and expenses;

iv. Pre- and post-judgment interest;

v. Such other and further relief as the Court deems just and proper;

vi. That Relator be awarded the maximum percentage of any recovery allowed to him under the California False Claims Act;

**c. Pursuant to the California Insurance Frauds Prevention Act:**

i. For civil penalties of $11,000 to be imposed for each and every false and fraudulent claim for payment submitted, presented or caused to be submitted or presented to an insurance company;

ii. For an assessment of three-times the amount of each claim for compensation made by Defendants;

iii. For pre and post-judgment interest;

iv. For reasonable attorneys' fees, costs, and expenses incurred in bringing this case;

v. For an award of such other and further relief as this Court deems just and proper; and

vi. That Relators be awarded the maximum percentage of any recovery allowed to them pursuant to Cal. Ins. Code § 1871.7.

Dated: January 3, 2019

**COTCHETT, PITRE & McCARTHY, LLP**

By: ______________________

JUSTIN T. BERGER
EMANUEL B. TOWNSEND
*Attorneys for Relator*

**DEMAND FOR JURY TRIAL**

*Relator* CURT CANALES hereby demands a jury trial on all issues so triable.

Dated: January 3, 2019

**COTCHETT, PITRE & McCARTHY, LLP**

By: __________________________

JUSTIN T. BERGER
EMANUEL B. TOWNSEND
*Attorneys for Relator*